UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEROY POWERS,

      Plaintiff,

v.                                 Case No:  8:14-cv-304-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

### OPINION AND ORDER

This cause is before the Court on Plaintiff, Leroy Power's Complaint (Doc. 1) filed on February 6, 2014.   Plaintiff, Leroy Powers seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.   Procedural History

On October 28, 2010, Plaintiff filed an application for supplemental security income, and on October 29, 2010 Plaintiff filed an application for disability insurance benefits asserting a disability onset date of March 1, 2007. (Tr. p. 119-126). Plaintiff's applications were denied initially on January 13, 2011, and on reconsideration on March 24, 2011. (Tr. p. 63-65). A hearing was held before Administrative Law Judge Roxanne Fuller ("ALJ") on August 23, 2012.   (Tr. p. 32-61).   The ALJ issued an unfavorable decision on September 14, 2012.   (Tr. p. 15-26).   On December 27, 2013, the Appeals Council denied Plaintiff's request for review, but did consider additional information provided to the Appeals Council.   (Tr. p. 1-10). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on February 6, 2014.   This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc. 14).

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)1(citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must

---

1 Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through March 31, 2013. (Tr. p. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2007, the alleged onset date. (Tr. p. 25).   At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: degenerative joint disease of the knees, osteoarthritis, and carpal tunnel syndrome citing 20 C.F.R. § 404.1520(c) and 416.920(c). (Tr. p. 17).   At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 20).

At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a range of light work except:

> occasional foot control operation with the right foot; never climb ramps or stairs; never climb ladders, ropes, or scaffolds; never balance; occasional stoop, crouch, kneel, and crawl; occasional handling objects, that is gross manipulation with both hands; occasional fingering, that is fine manipulation of times no smaller than the size of a paper clip with both hands; occasional feeling; no exposure to moving mechanical parts; no operating a motor vehicle; [and,] no exposure to unprotected heights.

(Tr. p. 20).

The ALJ, assisted by a vocational expert determined that Plaintiff could not return to his past relevant work as an auto sales person, office helper, and construction laborer.   (Tr. p. 24-25). The ALJ found that Plaintiff was a younger individual on the alleged onset date, that he had at least a high school education, was able to communicate in English, and the transferability of job skills was not material.   (Tr. p. 24-25). The ALJ determined that based on Plaintiff's age, education, work experience, and RFC, Plaintiff was able to perform jobs that exist in significant numbers in the national economy.   (Tr. p. 25).   Specifically, the ALJ, relying on the vocational expert, determined that Plaintiff was able to perform the work of a baker helper (DOT# 524.687-022[2]), unskilled job with SVP 2, generally performed at a light work level; ironer operator (DOT # 590.685-042), unskilled job with SVP 2, general performed at a light work level; and, scaling machine operator (DOT# 521.685-386) unskilled job with SVP 2, generally performed at a light work level. (Tr. p. 25-26).   The ALJ concluded that Plaintiff has not been under a disability from March 1, 2007 through the date of the decision. (Tr. p. 26).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67

---

2 <u>DOT</u> refers to the <u>Dictionary of Occupational Titles.</u>

F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises one issue on appeal. As stated by Plaintiff, the issue is whether the ALJ erred in failing to adequately develop a full and fair record regarding Plaintiff's mental impairments. Plaintiff argues that the ALJ failed to develop the record by failing to order a consultative psychological or psychiatric examination. The Commissioner responds that the ALJ was not required to obtain a consultative psychological or psychiatric examination.

A plaintiff bears the burden of proving he is disabled, and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. §416.912(a)). However, an ALJ "has a basic duty to develop a full and fair record." *Id*. (citing 20 C.F.R. 416.912(d)). *See,* 20 C.F.R. §404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources"). This

duty applies whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).

An ALJ is not required to order a consultative examination "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). In addition, a plaintiff must show prejudice before a court will find that a plaintiff's "'right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'" *Brown*, 44 F.3d at 934-35 (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). To determine if prejudice exists, the Court must determine if the record contains evidentiary gaps which will result in unfairness or clear prejudice. *Id*. at 935 (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)). "The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from the case would sustain [claimant's] contentions of her inability to work." *Id*.

When Plaintiff filed his application for disability benefits, he alleged only physical problems, and failed to allege any mental problems. (Tr. p. 157). On June 20, 2011, Plaintiff underwent a Psychiatric Evaluation at A & M Psychiatric Services. (Tr. p. 305-308). The Evaluation was completed by a nurse practitioner, Jacqueline Harrison, ARNP. (Tr. p. 305-308). Plaintiff claimed that he was unable to focus and concentrate, and he got angry when he was criticized. (Tr. p. 305). Ms. Harrison found Plaintiff to be well-groomed, fidgety, cooperative, sad, worrying, to be average in rate and volume of speech, goal directed, alert, oriented to person place and time, average intelligence, to have memory intact, to have an average fund of knowledge, and to have average concentration. (Tr. p. 307). Ms. Harrison diagnosed Plaintiff with mood

disorder not otherwise specific, attention deficit hyperactivity disorder (ADHS), and alcohol dependency.   (Tr. p. 307). She assigned a global assessment of function (GAF) score of 58.   (Tr. p. 307). Ms. Harrison recommended Alcoholics Anonymous (AA).   (Tr. p. 308). No medication was prescribed. (Tr. p. 308).

On June 21, 2011, Ms. Harrison completed a Mental Assessment Questionnaire. (Tr. p. 296-303).   Ms. Harrison set forth the same diagnosis.   (Tr. p. 296).   She found Plaintiff to have mood disturbance emotional lability, substance dependence, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, hostility and irritability.   (Tr. p. 297).   Ms. Harrison recommended no alcohol consumption and that Plaintiff should attend AA meetings and marriage counseling.   (Tr. p. 298). Ms. Harrison's prognosis was guarded because Plaintiff did not think his alcohol consumption was excessive.   (Tr. p. 298). Ms. Harrison found that Plaintiff's chronic pain, alcohol dependency, and mood instability were all connected.   (Tr. p. 299).   Ms. Harrison was unable to complete some of the form due to the fact that she had seen Plaintiff only one time.   (Tr. p. 299). Ms. Harrison concluded that Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in a work setting or elsewhere.

Plaintiff saw Ms. Harrison again on August 30, 2011.   Plaintiff's appearance was appropriate, his attitude/behavior was interactive, pleasant, cooperate, good eye contact, his speech was spontaneous, and his thought process was logical and organized, his thought content was appropriate. (Tr. p. 304). Ms. Harrison diagnosed Plaintiff with alcohol dependence, ruled out ADHS, and found Plaintiff to have a GAF score of 58.   (Tr. p. 304). Ms. Harrison prescribed Cymbalta 30 mg, and again encouraged Plaintiff to go to AA meetings. (Tr. p. 304).

On September 2, 2011, Plaintiff went to Jillian Glass, M.D. (Tr. p. 324).   Plaintiff complained of ADD, and alcohol and pain killer abuse. (Tr. p. 324). Plaintiff did not show signs of depression, and did state, "'I haven't felt this good in ten years.'" (Tr. p. 324). Plaintiff complained of having scattered thoughts and problems with focus and concentration.   (Tr. p. 324). Plaintiff admitted to being prescribed Cymbalta but stopped taking it after one day.   (Tr. p. 18, 325). Dr. Glass found Plaintiff well-groomed, cooperative, normal speech rate, thought processes were organized, language was coherent, relevant and goal directed, with no abnormal motor movements, and insight and judgment were fair.   (Tr. p. 325). Dr. Glass assessed Plaintiff with alcohol dependence, anxiety disorder, and considered a diagnosis of ADHD. (Tr. p. 326). Plaintiff requested medication to improve his concentration. (Tr. p. 326).   Dr. Glass found Plaintiff met the criteria for ADHD but due to his past alcohol use, she did not want to settle on this diagnosis until he was abstinent from alcohol for a longer period of time.   (Tr. p. 326). Dr. Glass had Plaintiff work on organizational skills and time management, and recommended he talk to someone such as an ADHD coach or therapist.   (Tr. p. 326). Dr. Glass recommended the prescription of Strattera as it is approved for use by adults with ADHD, but required a comprehensive physical before prescribing it. (Tr. p. 326). Plaintiff stopped taking this medication shortly after it was prescribed. (Tr. p. 43). Dr. Glass also recommended marital counseling, and AA meetings.   (Tr. p. 326).

Plaintiff testified at the hearing that he has been suffering his whole life with Attention Deficit Disorder ("ADD"), finding it hard to concentrate.   (Tr. p. 43). Plaintiff was given a trial medication by Dr. Glass of Strattera, but he only took it briefly because he had unpleasant side effects.   (Tr. p. 43). Plaintiff testified that Dr. Glass' diagnosis was that he drank too much, and she would consider a diagnosis of ADD.   (Tr. p. 53). Plaintiff also testified that obtained his GED two years prior to the hearing, and was enrolled in Pasco Hernando Community College at the

time of the hearing.   (Tr. p. 36).   He had been enrolled in college for a year and a half.   (Tr. p. 36).   He was a full time student, attending many classes on the internet.   (Tr. p. 37). His grades were A's and B's.   (Tr. p. 54). He also stayed at home with his 4 year old daughter and took care of her.   (Tr. p. 47). He tried to teach his daughter, gave her swimming lessons, and he went in the pool with her.   (Tr. p. 47, 55).

The ALJ carefully reviewed Plaintiff's testimony at the hearing and the medical evidence supporting Plaintiff's contention that he suffered from ADD.   (Tr. p. 17). The ALJ noted that Plaintiff testified as to his ADD, and that it was hard to concentrate and focus, but that he stopped taking any medication prescribed for it.   (Tr. p. 17, 18).   The ALJ noted that Plaintiff was enrolled in college classes, and was accommodated due to a disability in math. (Tr. p. 18).   The ALJ found that Plaintiff's past relevant work was performed at a skilled level, and that currently he takes care of his 4 year old daughter.   (Tr. p. 18).

The ALJ reviewed and summarized Plaintiff's medical records of the visit to Ms. Harrison on June 20, 2011 for a psychiatric evaluation. (Tr. p. 18). The ALJ found Ms. Harrison to have diagnosed Plaintiff with alcohol dependence and symptoms of ADHD, mood disorder, and had additional symptoms of anhedonia, feelings of guilt and worthlessness, difficulty concentrating, hostility and irritability.   (Tr. p. 19). The ALJ noted that Ms. Harrison recommended Plaintiff seek alcohol dependence treatment and marital counseling.   (Tr. p. 19). Ms. Harrison's prognosis was guarded because Plaintiff did not think his alcohol use was excessive. (Tr. p. 19).   The ALJ considered Ms. Harrison's findings that Plaintiff had moderate restrictions in his activities of daily living, moderate difficulties in maintaining social functioning, and frequent deficiencies in concentration, persistence and pace, but she was unable to complete the entire questionnaire because she had seen Plaintiff only one time.   (Tr. p. 19).   The ALJ gave Ms. Harrison's opinion

little weight finding that she is a nurse practitioner and is not considered an acceptable medical source, and that she saw Plaintiff only one time prior to completing the questionnaire.   (Tr. p. 19). The ALJ also noted that Ms. Harrison's overall evaluation was essentially normal, and Plaintiff had not sought additional mental health treatment "which is inconsistent with the finding that the claimant had moderate mental health difficulties." (Tr. p. 19).

The ALJ also reviewed and summarized the medical records of Dr. Glass. (Tr. p. 18).   The ALJ noted that Plaintiff told Dr. Glass that he had not felt that good for 10 years. (Tr. p. 18). The ALJ found that this statement by Plaintiff undermined the GAF score of 58 found by Ms. Harrison. (Tr. p. 18). The ALJ noted that Dr. Glass found Plaintiff to meet the criteria of ADHD , but before making such a diagnosis, she required that plaintiff remain abstinent from alcohol for a longer period of time.   (Tr. p. 18). Dr. Glass suggested non-pharmaceutical methods of treatment.   (Tr. p. 18).

The ALJ concluded that Plaintiff's medically determinable impairments of ADD, mood disorder, and substance abuse did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and therefore the ALJ did not find these impairments to be severe.   (Tr. p. 20). The ALJ considered the four broad functional areas in the disability regulations for evaluating mental disorders in section 12.00C of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. p. 20). The ALJ concluded that in the four broad functional areas, Plaintiff had no limitations in his activities of daily living, his ability to maintain social functioning, and his ability to sustain concentration, persistence or pace, and that he had not experienced any episodes of decompensation of an extended duration, and concluded Plaintiff's mental impairments were not severe. (Tr. p. 20).

Plaintiff asserts that the ALJ was required to obtain a consultative psychiatric examination pursuant to 42 U.S.C. §421(h) and *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988). Plaintiff cites to *McCall*, *supra*, for the proposition that if there is evidence that exists as to a mental impairment, then an ALJ may only determine that the claimant is not under a disability if the ALJ had made "every reasonable effort" to obtain the opinion of a qualified psychiatrist or psychologist citing to 42 U.S.C. §421(h). As the Commissioner indicates, section 421(h) applies to initial determinations, and not to ALJs.   As the Eleventh Circuit later found, "[t]he ALJ is under no obligation to seek independent, additional expert medical testimony before concluding that an impairment is not severe.   *Sneed v. Barnhart*, 214 Fed. App'x 883, 886 (11th Cir. 2006) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)).  In this case, when Plaintiff filed his application, he did not list any mental impairments, therefore, at the initial determination stage, the Commissioner had no obligation to obtain a mental health expert.

Plaintiff argues that the ALJ has a duty to develop the record and failed to meet his duty in this case by failing to obtain a consultative mental health examination.   Plaintiff did visit two mental health providers.   Ms. Harrison prescribed Cymbalta but Plaintiff chose not to take it.   Dr. Glass gave Plaintiff a trial medication, and again, Plaintiff chose not to take it due to its side effects. Plaintiff claimed that he had ADD his whole life.   (See, Tr. p. 43). Plaintiff obtained a GED, and successfully completed a year and a half of community college.   Plaintiff did not claim any mental impairment in his application, and if he later claimed a mental impairment, then he had the obligation to obtain support for his alleged medical impairment. *See*, *Ingram*, 496 F.3d at 1269. Further, the mere existence of an impairment does not reveal the extent to which it limits a plaintiff's ability to work or undermine an ALJ's findings in this regard.   *Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005).

The ALJ also carefully considered Plaintiff's activities of daily living. The ALJ listened to Plaintiff's testimony that he takes care of his 4 year old daughter during the day. The Plaintiff attempts to teach her, and also takes her to swimming lessons and participates in the swimming lessons. The Plaintiff obtained a GED and has completed a year and a half of college while alleging he was subject to his mental impairments. The ALJ found that these activities of Plaintiff as well as his other daily living activities contradicted his claims of the severity of his mental impairments. Although housework, and light cooking are minimal daily activities, and are not dispositive evidence of a claimant's ability to perform a level of work, an ALJ may consider a claimant's daily activities in evaluating a claimant's credibility as to claimant's testimony regarding symptoms. *Vennette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998) and *Kalishek v. Comm'r of Soc. Sec.*, 470 Fed. App'x 868, 871 (11th Cir. 2012) (citing 20 C.F.R. §404.1529(c)(3)(i) and (iv)). Taking care of a 4 year old and attempting to teach her lessons is not a minimal daily activity. Passing a GED and attending a year and a half of college is not a minimal activity for someone claiming a mental impairment that affects concentration, and persistence. The ALJ properly considered Plaintiff's daily activities when considering Plaintiff's credibility and determining Plaintiff's RFC.

The standard to determine if an ALJ erred by failing to order a consultative examinations is whether the ALJ made an informed decision and if there are evidentiary gaps in the record. The ALJ carefully reviewed the medical records that included information concerning Plaintiff's alleged mental impairments. The ALJ reviewed Ms. Harrison's records even though she is not an acceptable medical source, and cannot be used to establish an impairment. *See, Colon v. Colvin*, 2013 WL 4890312, *2 (M.D. Fla. Sept. 11, 2013). The ALJ also carefully reviewed Dr. Glass' medical records. Further, the ALJ reviewed Plaintiff's testimony as to his daily activities. With

all of this information, the ALJ made an informed decision as to Plaintiff's RFC. The records were sufficient for the ALJ to conclude that Plaintiff was capable of performing a range of light work with limitations, and there were no gaps in the evidentiary record.   Plaintiff has failed to show that there are any gaps in the evidentiary record that would have resulted in clear prejudice to Plaintiff.   The ALJ had sufficient evidence in the record to render a decision about Plaintiff's mental impairments, and did not err in failing to obtain a consultative mental examination.

Within the issue concerning whether the ALJ erred in failing to obtain a medical consultant, Plaintiff also appears to argue that the ALJ erred in failing to find that Plaintiff's mental impairments were severe.   Plaintiff argues that there was evidence that his mental impairments were severe, and that he received prescriptions for these medication, and that both Ms. Harrison's and Dr. Glass' records showed that Plaintiff's mental impairments were severe. Further, the ALJ could not rely on the lack of medical records to determine that Plaintiff's mental impairments were not severe.   The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its

effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, even if the ALJ erred in failing to find Plaintiff's mental impairments severe, the error is harmless because the ALJ found that Plaintiff had other severe impairments, and did consider Plaintiff's mental impairments in combination with all of Plaintiff's other impairments. The ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the knees, osteoarthritis, and carpal tunnel syndrome. The ALJ discussed in great length Plaintiff's medical records concerning his alleged mental impairments. The ALJ considered all of Plaintiff's impairments when making his RFC determination, and even if the ALJ erred in finding Plaintiff's mental impairments not to be severe, the error was harmless.

### IV. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).   The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 17, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties